# UNDER TEMPORARY SEAL

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. 13-5303 (ES) |
| Plaintiff, | OPINION |
| v. | |
| SHAHID HUSAIN RIZVI, a/k/a SHAHID HUSAIN, a/k/a RIZVI SHAHID HUSAIN, | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

This matter arises out of a denaturalization proceeding initiated by the United States of America (the "Government"). The Government seeks to revoke and set aside the order granting Defendant Shahid Husain Rizvi's application for naturalization and to cancel his certificate of naturalization under 8 U.S.C. § 1451(a). This Court has jurisdiction under 28 U.S.C. § 1345 and 8 U.S.C. § 1451(a).

Pursuant to Federal Rule of Civil Procedure 56, the Government moves for summary judgment on Counts I through III of its Complaint for denaturalization. (D.E. No. 11). The Government's motion is unopposed, as Defendant has not responded nor otherwise made any appearances before the Court. For the reasons set forth below, the Court GRANTS the Government's motion for summary judgment as to Count I of the Complaint. Accordingly, the Court revokes Defendant's citizenship and cancels his certificate of naturalization.

I.      **Factual Background and Procedural History**

On November 7, 1979, an individual by the name of Shahid <u>Hussain</u> Rizvi ("Mr. Rizvi") entered the United States on a visitor visa. (D.E. No. 12-1, Pl.'s Statement of Undisputed Material Facts ("SMF")[1] ¶ 5; D.E. No. 12-4, Declaration of William Carr ("Carr Decl.") Ex. A at 1). On November 12, 1987, Mr. Rizvi applied for temporary resident status. (SMF ¶ 7). As part of his application, Mr. Rizvi submitted a fingerprint card that contained fingerprint impressions of his ten fingers. (*Id.*). Upon receiving Mr. Rizvi's application, the United States Immigration and Naturalization Service ("INS")[2] assigned Mr. Rizvi a unique alien number and granted him temporary resident status. (SMF ¶ 8). Mr. Rizvi subsequently applied for an adjustment of status, which the INS granted, and he became a lawful permanent resident on May 24, 1990. (SMF ¶¶ 9-10; Carr Decl. Exs. E-F).

On January 13, 1994, a different individual by the name of Shahid <u>Husain</u> Rizvi ("Defendant") filed a Form I-90, Application to Replace Alien Registration Card, claiming that he was a permanent resident and that he never received his permanent resident card. (SMF ¶¶ 12, 14; Carr Decl. Ex. G). Together with the I-90 form, Defendant provided the INS with photos of himself and an impression of his fingerprint. (SMF ¶ 16; Carr Decl. ¶ 17; Carr Decl. Ex. H). No records exist showing that the United States ever granted Defendant lawful permanent resident status. (SMF ¶ 11; Carr Decl. ¶ 15). Yet, in his application for a replacement card, Defendant claimed to be a permanent resident and provided the same birthdate and alien number as Mr. Rizvi,

---

[1] Defendant failed to submit a responsive statement of facts. Accordingly, the Court accepts the Government's factual statements as uncontested for purposes of this motion for summary judgment. *See Friedman v. Bank of Am., N.A.*, No. 09-2214, 2012 WL 1019220, at *6 n.2 (D.N.J. Mar. 26, 2012).

[2] On March 1, 2003, the INS ceased to exist as an agency, and the Department of Homeland Security absorbed most of its functions. (D.E. No. 12-2, Declaration of Sandra Pasley ("Pasley Decl.") ¶ 2).

though he used his own New Jersey address. (SMF ¶¶ 13, 15, 17). In doing so, Defendant misappropriated Mr. Rizvi's identity. On March 7, 1994, the INS approved Defendant's I-90 application and issued him a permanent resident card bearing his name—Shahid Husain Rizvi—but listing Mr. Rizvi's birthdate and alien number. (SMF ¶¶ 18-19; Carr Decl. Ex. G).

On November 4, 1994, Defendant filed a Form N-400, Application for Naturalization. (SMF ¶ 20). Defendant claimed that he had been a lawful permanent resident for at least five years prior to filing his application, and he listed Mr. Rizvi's birthdate and alien number on the N-400 form. (SMF ¶¶ 21, 23; Carr Decl. Ex. I). In support of his application, Defendant also provided a copy of the permanent resident card that he obtained in March of that year. (SMF ¶ 22; Carr Decl. ¶ 19).

On January 25, 1995, while Defendant's N-400 application was pending, the Jersey City, New Jersey Police Department arrested Defendant, under the name Shahid Husain, and charged him with shoplifting. (SMF ¶ 24; Carr Decl. ¶ 20; Carr Decl. Ex. K). The police recorded Defendant's fingerprints and provided them, along with Defendant's criminal history, to the FBI. (SMF ¶ 25; Carr Decl. ¶ 21). The FBI later uploaded this information to its Integrated Automated Fingerprint Identification System ("IAFIS"), which is a computerized database of arrestees' fingerprint impressions. (*Id.*). On February 9, 1995, Defendant was convicted of shoplifting, in violation of N.J. Stat. Ann. § 2C:20-11. (SMF ¶ 26; Carr Decl. Ex. K).

On May 30, 1995, an INS employee interviewed Defendant, under oath, to determine his eligibility for naturalization. (SMF ¶ 27; Carr Decl. Ex. I; Pasley Decl. ¶ 7). Following standard procedure, the INS employee asked Defendant question 15(b) of the N-400 form, which asked if he had ever "been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations." (SMF ¶ 28; Pasley Decl. ¶¶ 10-

12). Although he had been arrested for shoplifting and convicted a few months earlier, Defendant responded in the negative to question 15(b) and then swore under oath that the content of his N-400 application was true to the best of his knowledge and belief. (SMF ¶¶ 24, 26, 29-30; Pasley Decl. ¶¶ 13, 15; Carr Decl. Ex. I, Parts 7 & 12). Based on the N-400 application and Defendant's answers during the interview, the INS approved Defendant's naturalization application. (SMF ¶ 31). On June 6, 1995, the INS granted Defendant United States citizenship and provided him with a certificate of naturalization bearing his name, but Mr. Rizvi's credentials. (SMF ¶¶ 32-33; Carr Decl. Ex. L).

On October 30, 2013, Defendant was arrested at his home and charged with tampering with public records or information, in violation of N.J. Stat. Ann. §§ 2C:21-17.2(A) and 2C:28-7A(1). (SMF ¶ 34; Carr Decl. Ex. M). Following Defendant's arrest, the Hudson County Prosecutor's Office took Defendant's fingerprints and uploaded them to IAFIS. (SMF ¶ 35; Carr Decl. ¶ 24). These fingerprints match the ones that were uploaded in 1995 after Defendant's shoplifting arrest as well as the ones that Defendant submitted with his I-90 application. (SMF ¶¶ 36-37; Carr Decl. ¶ 27; D.E. No. 12-3, Declaration of Genius Johnson ("Johnson Decl.") ¶¶ 7-10, 17). None of these fingerprints match the fingerprints that Mr. Rizvi submitted when he sought temporary resident status, thus confirming that Defendant and Mr. Rizvi were not the same person; rather, Defendant misappropriated Mr. Rizvi's identity. (SMF ¶ 39; Johnson Decl. ¶¶ 7-10, 17).

Upon discovering Defendant's misrepresentations, the Government filed a complaint seeking to revoke and set aside the order granting Defendant's application for naturalization and to cancel his certificate of naturalization under 8 U.S.C. § 1451(a). (D.E. No. 1 ("Compl.")). On September 24, 2013, a deputy U.S. Marshal personally served Defendant with a copy of the

Summons and Complaint. (D.E. No. 4). The Government then moved for summary judgment on March 18, 2014. (D.E. No. 6).

On May 5, 2014, the Court administratively terminated the Government's motion for summary judgment because it was improperly filed. (D.E. No. 10). The Government filed the instant motion for summary judgment the next day and served Defendant by overnight mail. (D.E. No. 11). Defendant has not appeared or responded to the Government's motion for summary judgment. Therefore, this motion is unopposed.

## II.     Standard of Review

A court shall grant summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a summary judgment motion, the moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324.

In this case, Defendant's failure to respond to a motion for summary judgment "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Rather, the Court still must determine whether the unopposed motion for summary judgment "has been properly made and supported and whether granting summary judgment is appropriate." *See Muskett v. Certegy Check Servs., Inc.*, No. 08-3975, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010) (internal quotation marks omitted).

In a denaturalization proceeding such as the instant case, the Government bears a heavy burden of proof. *Fedorenko v. United States*, 449 U.S. 490, 505 (1981); *United States v. Breyer*, 41 F.3d 884, 889 (3d Cir. 1994). "The evidence justifying revocation of citizenship must be 'clear,

unequivocal, and convincing' and not leave 'the issue in doubt.'" *Fedorenko*, 449 U.S. at 505 (quoting *Schneiderman v. United States*, 320 U.S. 118, 125 (1943)). Moreover, "the facts and the law should be construed as far as is reasonably possible in favor of the citizen." *Schneiderman*, 320 U.S. at 122.

## III. Discussion

The Government presents three independent grounds for denaturalizing Defendant, which are set forth in Counts I through III of the Complaint. Count I alleges that Defendant illegally procured his United States citizenship because he was never lawfully admitted for permanent residence to the United States. (Compl. at 9-10). Defendant plainly fails to meet the statutory eligibility requirements for naturalization, thus rendering his citizenship illegally procured. Denaturalization is warranted on this basis alone, and the Court declines to address the Government's arguments as to Count II and Count III of the Complaint.

It is axiomatic that "American citizenship is a precious right." *Costello v. United States*, 365 U.S. 265, 269 (1961). Citizenship, once conferred, can only be taken away with the clearest justifications and proof. *Schneiderman*, 320 U.S. at 122. Nonetheless, a district court must revoke and set aside an order granting a person United States citizenship and cancel the person's certificate of naturalization if the order and certificate were: (1) "illegally procured" or (2) "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Therefore, once the government meets its heavy burden of proving that a naturalized citizen obtained his citizenship illegally, or by concealment of a material fact or willful misrepresentation, the district court "has no discretion to excuse the conduct." *Fedorenko*, 449 U.S. at 517.

A noncitizen illegally procures naturalization if he naturalizes without meeting the statutory eligibility requirements for naturalization. *Id.* at 506; *United States v. Ginsburg*, 243

6

U.S. 472, 475 (1917) ("No alien has the slightest right to naturalization unless all statutory requirements are complied with . . . ."). To establish eligibility for naturalization, an alien must show that he was "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a); *see also* 8 U.S.C. § 1429. The phrase "lawfully admitted for permanent residence" is defined as "the status of having been *lawfully* accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20) (emphasis added). In other words, "the phrase means a noncitizen who holds lawful permanent resident ("LPR") status." *Adegoke v. Fitzgerald*, 784 F. Supp. 2d 538, 541 (E.D. Pa. 2011) (citing *Martinez v. Mukasey*, 519 F.3d 532, 546 (5th Cir. 2008)). Inadmissible aliens are not eligible for naturalization because they are ineligible for adjustment to LPR status. *See* 8 U.S.C. § 1255(a) ("The status of an alien . . . may be adjusted . . . to that of an alien lawfully admitted for permanent residence if . . . the alien is eligible to receive an immigrant visa and *is admissible to the United States for permanent residence* . . . ." (emphasis added)); *see also* 8 U.S.C. §§ 1427(a), 1429.

Here, there is no question that Defendant illegally procured his naturalization, since he naturalized even though he was not lawfully admitted for permanent residence. The Government never granted Defendant the privilege of LPR status. (Carr Decl. ¶ 15). The fact that Defendant possessed a permanent resident card at the time he applied for naturalization is irrelevant because he obtained that card through fraud. *Cf. Gallimore v. Att'y Gen.*, 619 F.3d 216, 223 (3d Cir. 2010) ("[A]n alien whose status has been adjusted to LPR—but who is subsequently determined to have obtained that status adjustment through fraud—has not been 'lawfully admitted for permanent residence' because the 'alien is deemed, *ab initio,* never to have obtained [LPR] status.'" (quoting *In Re Koloamatangi*, 23 I. & N. Dec. 548, 551 (BIA 2003))); *Kyong Ho Shin v. Holder*, 607 F.3d

7

1213, 1217 (9th Cir. 2010); *De La Rosa v. DHS*, 489 F.3d 551, 554 (2d Cir. 2007) (per curiam). Consequently, Defendant was ineligible to naturalize. *See Fedorenko*, 449 U.S. at 506.

Additionally, Defendant illegally procured his naturalization because he naturalized even though he was inadmissible. Procuring an immigration benefit through fraud or willful misrepresentation renders a noncitizen inadmissible. *See* 8 U.S.C. § 1182(a)(6)(C)(i). In this case, Defendant committed fraud to secure an immigration benefit when he misappropriated Mr. Rizvi's identity to obtain a lawful permanent resident card. (SMF ¶¶ 12-15; Carr Decl. Ex. G). This fraud rendered Defendant inadmissible, thus precluding his adjustment to lawful permanent resident status. *See* 8 U.S.C. § 1255(a). As a result, Defendant was ineligible to naturalize. *See Fedorenko*, 449 U.S. at 506.

Because Defendant was never lawfully admitted for permanent residence, and because Defendant was inadmissible, he did not meet the statutory requirements for naturalization. By naturalizing without satisfying these requirements, Defendant illegally procured his naturalization. *See id.* Given the clear and unequivocal evidence of Defendant's illegal procurement of naturalization, this Court "has no discretion to excuse [Defendant's] conduct" and must revoke his citizenship under 8 U.S.C. § 1451(a). *See id.* at 517.

**IV. Conclusion**

For the forgoing reasons, this Court GRANTS the Government's motion for summary judgment as to Count I of the Complaint. Defendant's citizenship is hereby revoked and his certificate of naturalization is hereby cancelled. An appropriate order accompanies this Opinion.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**