# UNDER TEMPORARY SEAL

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>SHAHID HUSAIN RIZVI, a/k/a<br>SHAHID HUSAIN, a/k/a RIZVI SHAHID<br>HUSAIN,<br><br>        Defendant. | Civil Action No. 13-5303 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

This matter arises from a denaturalization proceeding brought by the United States (the "Government") against Defendant Shahid Husain Rizvi ("Defendant"). The Court has jurisdiction under 28 U.S.C. § 1345 and 8 U.S.C. § 1451. Pursuant to Federal Rule of Civil Procedure 60(b)(1), Defendant moves to vacate the Court's December 17, 2014 Opinion and Order granting summary judgment to the Government, revoking his citizenship, and cancelling his certificate of naturalization. (D.E. No. 18). For the reasons set forth below, the Court denies Defendant's motion to vacate.

**I.    Factual Background**

The Court previously set forth the background of this case in its December 17, 2014 Opinion. (D.E. No. 15, Opinion ("Op.")). Therefore, the Court provides a limited recitation of the factual background and procedural history.

In 1979, an individual, different from Defendant and named Shahid Hussain Rizvi ("Rizvi"), entered the United States on a visitor visa. (D.E. No. 12-1, Plaintiff's Statement of Undisputed Material Facts ("SMF") ¶ 5). He later adjusted his status from temporary to permanent resident and became a lawful permanent resident in 1990. (*Id.* ¶¶ 9-10).

In 1989, Defendant entered the United States on a B-2 temporary visitor visa under the name Shahid Husain Rizvi. (D.E. No. 1, Complaint for Denaturalization ("Compl.") ¶ 8). Defendant's visa authorized only a six-month presence, but he overstayed his visa by remaining in the United States beyond the permitted period. (*Id.* ¶¶ 9-10). Later, Defendant filed a Form I-90, Application to Replace Alien Registration Card while purporting to be Rizvi; the Immigration and Naturalization Service ("INS")[1] received his I-90 application on January 13, 1994. (SMF ¶¶ 12, 17). In in his application for a replacement card, Defendant claimed to be a permanent resident and provided the same birthdate and alien number as Rizvi, though he listed his own address. (*Id.* ¶¶ 13, 15, 17). Yet no records exist showing that the United States had ever granted Defendant lawful permanent resident status. (*Id.* ¶ 11). Ultimately, the INS approved Defendant's I-90 application and issued him a replacement permanent resident card in March 1994. (*Id.* ¶¶ 18-19).

In November 1994, Defendant, still purporting to be Rizvi, applied for naturalization using his illegally obtained permanent resident card. (*Id.* ¶¶ 20, 22). In January 1995, while his naturalization application was pending, Defendant was arrested under the name Shahid Husain and charged with shoplifting; he was convicted of the offense a few weeks later. (*Id.* ¶¶ 24, 26). In connection with his arrest, the Jersey City Police Department recorded his fingerprint impressions and submitted them to the Federal Bureau of Investigation ("FBI"). (*Id.* ¶¶ 25). Later, while under oath during his naturalization interview, Defendant denied having ever been arrested or convicted

---

[1] On March 1, 2003, the INS ceased to exist as an agency, and the Department of Homeland Security absorbed most of its functions. (D.E. No. 12-2, Declaration of Sandra Pasley ("Pasley Decl.") ¶ 2).

2

of an offense. (*Id.* ¶¶ 27-30). The INS approved his application and granted him citizenship in June 1995. (*Id.* ¶¶ 31-32).

Several years after Defendant became a citizen, Rizvi applied for naturalization. (Compl. ¶ 44). The INS, believing it had already naturalized Rizvi, suspected that Defendant misappropriated Rizvi's identity to secure a replacement permanent resident card and gain United States citizenship. (*Id.* ¶ 45). In November 1998, the FBI completed a fingerprint comparison of Defendant and Rizvi, which revealed that the two sets of fingerprints did not match. (D.E. No. 1-1, Affidavit of Good Cause of William Carr ¶ 19). Ultimately, Defendant was arrested for identity theft on October 30, 2013 and charged under New Jersey state law with tampering with public records or information. (SMF ¶ 34). Fingerprints taken following his October 2013 arrest matched those taken in connection with his earlier shoplifting arrest and those submitted with his Form I-90. (*Id.* ¶¶ 35-37). Meanwhile, the fingerprints Rizvi submitted with his application to adjust status from temporary to permanent resident and with his application for lawful permanent residence did *not* match the fingerprints Defendant submitted with his Form I-90 nor those taken in connection with his two arrests. (*Id.* ¶¶ 36-39).

**II.     Procedural History**

On September 4, 2013, the Government filed its complaint for denaturalization against Defendant, seeking to revoke his citizenship and cancel his certificate of naturalization pursuant to 8 U.S.C. § 1451(a). (Compl. ¶ 1). On September 24, 2013, a deputy U.S. Marshal personally served Defendant with copies of the Summons and Complaint. (D.E. No. 4). On March 18, 2014, the Government filed a motion for summary judgment. (D.E. No. 6). The Government later requested an extension of time on Defendant's behalf after his daughter communicated his need for more time in an exchange of emails with the Government's counsel. (D.E. No. 7). On April

3

21, 2014, Magistrate Judge Joseph A. Dickson granted Defendant an extension of time and adjourned the motion day for the Government's motion for summary judgment to June 2, 2014. (D.E. No. 8). Later that day, counsel for the Government contacted Defendant's daughter, notifying her of the Court's extension order and informing her that Defendant now had until May 19, 2014 to oppose the motion. (D.E. No. 21-1, Declaration of Hans H. Chen ("Chen Decl.") ¶ 6 & Ex. C). The following day, this Court responded to a handwritten letter from Defendant, dated April 14, 2014, and granted Defendant an extension until May 21, 2014 to respond to the Government's motion. (D.E. No. 9).

On May 5, 2014, the Court administratively terminated the Government's motion for summary judgment because it was improperly filed without the required attachments. (D.E. No. 10). The next day, the Government re-filed its motion for summary judgment with the required attachments and a supporting brief; the Government also served Defendant with a copy of these documents. (D.E. Nos. 11, 12, 21-6). In a cover letter enclosing copies of the re-filed motion, the Government informed Defendant of his new deadline to file an opposition brief. (Chen Decl. ¶ 8 & Ex. E). Defendant did not respond to the re-filed motion nor did he submit any extension requests.

On December 17, 2014, the Court ruled in the Government's favor on the unopposed motion for summary judgment. (D.E. Nos. 15, 16). Thereafter, Defendant retained new counsel and filed the instant motion to vacate the Court's judgment. (D.E. No. 17, Notice of Appearance; D.E. No. 18, Defendant's Motion to Vacate Summary Judgment by Default and Other Relief ("Def.'s Br.")).

### III. Standard of Review

Defendant moves to vacate the Court's judgment under Federal Rule of Civil Procedure 60(b)(1). (Def.'s Br. at 1). Rule 60(b)(1) empowers the Court to grant a movant relief from a final judgment if the movant can demonstrate "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The purpose of Rule 60 "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ., & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978). To that end, "relief from a judgment under Rule 60 should be granted only in exceptional circumstances." *Id.*

Defendant argues that his failure to respond to the Government's motion for summary judgment constitutes "excusable neglect." (Def.'s Br. at 3). "The test for excusable neglect is equitable, and requires [the Court] to weigh the totality of the circumstances." *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007) (internal quotation marks omitted). Specifically, the Court evaluates four factors: (1) the danger of prejudice to the other party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the movant's control; and (4) whether the movant acted in good faith. *In re Cendant Corp. PRIDES Litig.*, 234 F.3d 166, 171 (3d Cir. 2000) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *see also Balyan v. Baldwin*, 566 F. App'x 175, 176 (3d Cir. 2014) (indicating that district courts have a "duty of explanation" when evaluating a Rule 60(b)(1) excusable neglect motion and "must entertain an analysis of the *Pioneer* factors" (alterations and internal quotation marks omitted)).

Even if a movant under Rule 60(b)(1) "establish[es] that his failure to oppose [a] motion for summary judgment was in some way justified or excusable," he may not obtain relief under Rule 60(b)(1) unless he "raise[s] a viable defense on the merits." *United States v. Moya*, 118 F.

App'x 666, 668 (3d Cir. 2005) (citing *Lorenzo v. Griffith*, 12 F.3d 23, 27 (3d Cir. 1993)); *see also Logan v. Am. Contract Bridge League*, 173 F. App'x 113, 116 (3d Cir. 2006).[2]

## IV.     Discussion

As a threshold matter, Defendant asserts that the Court's grant of summary judgment amounted to a denaturalization by default. (Def.'s Br. at 3, 6). A denaturalization by default is generally disfavored. *See Klapprott v. United States*, 335 U.S. 601, 612-13 (1949) (stating that courts should not denaturalize unless "the Government first offers proof of its charges sufficient to satisfy the burden imposed on it, even in cases where the defendant has made default in appearance"). Contrary to Defendant's contention, the Court decided the motion on the merits, not by default. The Court weighed the Government's evidence and concluded that the Government met its burden for denaturalization under 8 U.S.C. § 1451(a). (*See* Op. at 6-8).

Next, the Court weighs the *Pioneer* factors for excusable neglect and considers whether Defendant has raised a meritorious defense. For the reasons set forth below, the Court concludes that Defendant has shown neither excusable neglect nor a meritorious defense and therefore does not qualify for relief under Rule 60(b)(1).

### A.     Danger of Prejudice to the Government

The first *Pioneer* factor requires the Court to evaluate whether prejudice would befall the Government if the Court were to grant the Rule 60(b)(1) motion. To establish prejudice, the non-moving party "must assert loss of available evidence, increased potential for fraud or collusion, or

---

[2] In *Lorenzo*, the Third Circuit held that the same factors used to evaluate motions to vacate default judgment should be used to evaluate motions to vacate unopposed summary judgments: "(1) whether the [prevailing party] will be prejudiced if the default is lifted; (2) whether the [petitioner] has a meritorious defense; and (3) whether the default was the result of the [petitioner's] culpable conduct." *Lorenzo*, 12 F.3d at 27 (quoting *Zawadski De Bueno v. Bueno Castro*, 822 F.2d 416, 419-20 (3d Cir. 1987)) (alterations in original). The first and third factors overlap with the first and third *Pioneer* factors, respectively. Thus, in addition to conducting a *Pioneer* analysis, the Court evaluates whether Defendant has a meritorious defense to the instant denaturalization action.

substantial reliance upon the judgment." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999) (internal quotation marks omitted); *Griffin v. United States*, No. 12-6137, 2013 WL 5676206, at *4 (D.N.J. Oct. 17, 2013) (acknowledging that "[t]he Third Circuit has held that under Rule 60(b), there is no prejudice absent loss of available evidence or increased potential for fraud or collusion" (internal quotation marks omitted)); *see also J & H Int'l v. Karaca Zucciye Tic. San A.S.*, No. 10-3975, 2012 WL 4742176, at *6 (D.N.J. Oct. 3, 2012) (holding that, in analogous context of a motion to vacate default judgment, "prejudice is established when a plaintiff's ability to pursue the claim has been hindered . . . [by circumstances such as,] loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment" (alterations in original and internal quotation marks omitted)).

The Government does not address whether granting the instant motion would result in prejudice. However, the Court sees no basis upon which the Government could convincingly "assert loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *See In re O'Brien Envtl. Energy, Inc.*, 188 F.3d at 127. If the Court granted the instant motion to vacate, Defendant would likely oppose the Government's motion for summary judgment and the Government would then have an opportunity to submit a reply brief. Being required to litigate this case with opposition, rather than winning on an unopposed motion for summary judgment, does not hinder the Government's ability to pursue Defendant's denaturalization. Accordingly, the first *Pioneer* factor weighs in favor of Defendant's motion.

### B.     Length of Delay

The delay to be considered under the second *Pioneer* factor is the period between the dispositive action from which relief is sought and the filing of the Rule 60(b)(1) motion. *In re Cendant Corp. PRIDES Litig.*, 235 F.3d at 183. Here, the delay consisted of roughly two months.

The Court entered summary judgment on December 17, 2014, and Defendant moved to vacate that judgment on February 13, 2015.  (D.E. Nos. 15, 16, 18).  Courts have viewed a two-month delay as excusable.  *See, e.g.*, *In re O'Brien Envtl. Energy*, 188 F.3d at 130 (excusing a two-month delay); *Griffin*, 2013 WL 5676206, at *3 (same); *cf. Kohl's Dep't Stores, Inc. v. Levco–Route 46 Assocs., L.P.*, 121 F. App'x 971, 975 (3d Cir. 2005) (affirming district court's finding that a four-month delay was inexcusable).  Accordingly, this factor weighs in favor of Defendant's motion.

### C.    Reason for the Delay and Defendant's Control of the Reason

The third *Pioneer* factor requires the Court to consider the reason for the delay and the degree to which it was within the movant's control.  *Pioneer*, 507 U.S. at 395.  "[A] litigant's protracted and unjustified carelessness alone does not constitute excusable neglect for Rule 60(b)(1) purposes."  *Den Be ex rel. Bell v. Hamilton Twp. Mun. Court*, No. 7-1588, 2008 WL 5156683, at *3 (D.N.J. Dec. 5, 2008); *see also Dively v. Seven Springs Farm, Inc.*, No. 10-126, 2012 WL 5818319, at *2 (W.D. Pa. Nov. 15, 2012) (indicating that "carelessness of a litigant or his attorney is not ground for relief under Rule 60(b)(1)").

Because Defendant's failure to respond to the Government's motion for summary judgment was entirely within his control, the Court concludes that the third factor weighs heavily against granting his motion to vacate.  Defendant claims that "he did not understand that the Complaint was a separate matter from the New Jersey Superior Court matter in which he is a defendant" facing criminal charges associated with his alleged identity theft.  (Def.'s Br. at 6).  Fatally, however, Defendant concedes that "his counsel in [the criminal] matter advised him that he must respond to the attorney for the Office of Immigration Litigation."  (*Id.*).  As the Government correctly points out, Defendant "had actual knowledge of the motions for summary judgment and the deadlines to oppose them," since the Government reminded him and his family

members of those deadlines. (D.E. No. 21, Plaintiff's Opposition to Motion to Vacate Judgment at 7; *see also* Chen Decl. ¶¶ 6, 8 & Exs. C, E). Defendant's extension request in connection with the Government's first motion for summary judgment further demonstrates that he understood his duty to respond and was capable of responding. Accordingly, the third *Pioneer* factor weighs strongly against a finding of excusable neglect.

### D. Defendant's Good Faith

The Third Circuit has characterized "good faith" as acting "with reasonable haste to investigate the problem and to take available steps toward a remedy." *In re Cendant Corp. PRIDES Litig.*, 235 F.3d at 184. Defendant has not demonstrated good faith and would be strained to do so. There is no indication that Defendant made any effort to oppose the Government's motion for summary judgment despite receiving an extension of response time. Nonetheless, the Court declines to weigh the fourth *Pioneer* factor either against or in favor of Defendant's motion because neither party advances an argument regarding this factor.

### E. Meritorious Defense

In its previous Opinion, the Court granted summary judgment on Count I of the Government's Complaint, which alleged that Defendant illegally procured his United States citizenship. (Op. at 6, 8; Compl. at 9-10). The Court held that Defendant illegally procured his naturalization because he naturalized even though he was not lawfully admitted for permanent residence and was inadmissible. (Op. at 7-8). The Court concluded that, "[g]iven the clear and unequivocal evidence of Defendant's illegal procurement of naturalization," it lacked discretion to excuse his conduct and therefore was required to revoke his citizenship under 8 U.S.C. § 1451(a). (Op. at 8 (citing *Fedorenko v. United States*, 449 U.S. 490, 517 (1981))).

In moving to vacate the Court's judgment, Defendant does not dispute the fact that he never lawfully obtained permanent resident status prior to his naturalization.[3] As detailed in the Court's prior Opinion, Defendant's procurement of naturalization without lawful permanent resident status is grounds alone for denaturalization. (*See* Op. at 6-8). Because Defendant lacks a meritorious defense, he is not entitled to relief under Rule 60(b)(1). *See Moya*, 118 F. App'x at 668 (holding that an appellant facing denaturalization "could not obtain relief under Rule 60(b)(1) because he failed to raise a viable defense on the merits before the District Court").

**V.     Conclusion**

While Defendant's delay was brief and granting his motion to vacate poses no prejudice to the Government, the reason for Defendant's failure to respond was within his control and Defendant admits that his counsel advised him to respond. Having considered all four *Pioneer* factors, the Court concludes that Defendant has not demonstrated excusable neglect. Furthermore, Defendant cannot obtain relief under Rule 60(b)(1) because he does not have a meritorious defense. Accordingly, the Court denies Defendant's motion to vacate.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3] Defendant notes in his moving brief, under the subheading "Meritorious Defense," that he is in poor health, disabled, and unable to work due to diabetes, heart disease, and high blood pressure. (Def.'s Br. at 4). Defendant does not articulate how his poor health rendered him unable to follow counsel's advice to respond to the Government's motion. Nor is it discernible how his health is relevant to any meritorious defense.